[No. C020037. Third Dist. Jan. 24, 1997.]

THE PEOPLE, Plaintiff and Appellant, v.
FRANCISCO OLMOS LOPEZ, Defendant and Respondent.

COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Robert E. Venturi and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Appellant.

Mark E. Cutler and Melissa K. Nappan, under appointments by the Court of Appeal, for Defendant and Respondent.

OPINION

SPARKS, J.—Except as provided in Penal Code sections 799 and 800, a prosecution for an offense punishable by imprisonment in the state prison must "be commenced within three years after commission of the offense."[1] (Pen. Code, § 801.) This general statute of limitations is subject, however, to a discovery provision for specified crimes. Thus, for offenses involving described misconduct in office by a public employee, the statute of limitations "does not commence to run until discovery of [such] an offense." (Pen. Code, § 803, subd. (c).) In *People* v. *Swinney* (1975) 46 Cal.App.3d 332 [120 Cal.Rptr. 148] (disapproved on another point in *People* v. *Zamora* (1976) 18 Cal.3d 538, 564, fn. 26 [134 Cal.Rptr. 784, 557 P.2d 75]), construing an earlier version of the limitations statute, we held that the statute starts to run "when the crime is discovered by either the victim or the responsible law enforcement authorities." (46 Cal.App.3d at p. 344.) One of the central questions in this appeal relates to who is the victim for purposes of the statute of limitations when the crimes involve misappropriation of public funds and perjury for certifying false official payment invoices. We hold that the victim is a public employee occupying a supervisorial position who has the responsibility to oversee the fiscal affairs of the entity and thus has a legal duty to report a suspected offense to law enforcement agencies.

---

[1]A prosecution is commenced, among other times, when an indictment is filed. (Pen. Code, § 804, subd. (a).)

Penal Code section 799 provides: "Prosecution for an offense punishable by death or by imprisonment in the state prison for life or for life without the possibility of parole, or for the embezzlement of public money, may be commenced at any time." Penal Code section 800 provides: "Except as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense."

The punishment for both misappropriation of public funds in violation of Penal Code section 424 and perjury in violation of Penal Code section 118 is two, three or four years in the state prison. (Pen. Code, §§ 424, 126.) For purposes of determining the applicable limitation period, "[a]n offense is deemed punishable by the maximum punishment prescribed by statute for the offense, regardless of the punishment actually sought or imposed. Any enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense." (Pen. Code, § 805, subd. (a).)

The second major issue relates to who bears the burden of proof at a special, pretrial hearing on defendant's motion to dismiss the indictment on the ground that the statute of limitations has run. We conclude that the defendant bears the burden at this hearing to prove that the statute has run as a matter of law.

Defendant Francisco Olmos Lopez was indicted on two counts of misappropriation of public funds (Pen. Code, § 424), six counts of perjury (Pen. Code, § 118) and one count of presenting a false claim to a state board (Pen. Code, § 72). The count for presenting a false claim was later dismissed on the motion of the prosecution.

Defendant moved to dismiss the indictment on the ground that the prosecution was barred by the statute of limitations. The trial court granted the motion and the People appeal. We hold that defendant failed to carry his burden and therefore shall reverse the order of dismissal.

## PROCEDURAL HISTORY

On April 22, 1994, an indictment was filed against defendant charging the nine felonies recounted earlier. Count one charged the misappropriation of public funds between August 1, 1987, and June 30, 1988.[2] It alleged that defendant, while charged with the transfer and disbursement of public moneys, appropriated those funds without authority of law to his own use or the use of Tlaloc Family Health Center. Count two charged the same offense and alleged the offense occurred between July 1, 1988, and June 30, 1989, in the same manner as count one. Counts three through eight charged the crime of perjury alleged to have been committed on January 7, 1989, January 29, 1989, January 31, 1989, February 29, 1989, April 5, 1989, and May 1, 1989, respectively. Each of these counts alleged that defendant certified as true in official records material matters he knew to be false, namely in Department of Health Services documents entitled "Prospective Payment Invoice." Count nine involved the alleged presentation of a false claim to the State Personnel Board in violation of Penal Code section 72, and as we have noted was dismissed on the motion of the prosecution.

The indictment further alleged that these offenses "were discovered within in the meaning of Penal Code section 803(c)(1) on or about July 17, 1992,

---

[2]Penal Code section 424, subdivision 1, provides: "Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either: [¶] 1. Without authority of law, appropriates the same, or any portion thereof, to his own use, or to the use of another; . . . Is punishable by imprisonment in the state prison for two, three or four years, and is disqualified from holding any office in this state."

when Special Agent Mark Olenslager of the California Department of Justice interviewed Belen Abeyta in regards to grant applications submitted to the California Department of Health Services on behalf of the Tlaloc Family Health Center; that the Department of Justice had no knowledge, actual or constructive, prior to the date of 'discovery' of the offenses charged herein, that is, on or about July 17, 1992; and, that the reason why the offenses were not 'discovered' earlier is because there had been no disclosure by any persons within the Department of Health Services that [defendant] was involved with the submission of fraudulent grant applications. Therefore, this action has been timely commenced."

After pleading not guilty to these offenses, defendant moved to set aside the indictment on the grounds there was no probable cause to indict him (Pen. Code, § 995), and to dismiss the indictment because it was barred by the statute of limitations. The court denied the motion to set aside the indictment under Penal Code section 995 and then set an evidentiary hearing on the statute of limitations motion. Following the hearing, the trial court granted defendant's motion to dismiss the indictment on the ground that the statute of limitations had run. This appeal by the People followed. (Pen. Code, § 1238, subd. (a)(8).)

### THE GRANTS-IN-AID FOR CLINICS PROGRAM

This case involves alleged improprieties in the grants-in-aid for clinics program conducted by the Department of Health Services (Department). As explained to the grand jury by a health program manager for the Department, "[t]he grants in aid program was a program with approximately a million dollars that funded primary care clinics throughout the State of California." The program was initially introduced in the Legislature, the manager continued, as "AB 1317 I think is what it was called, grants in aid legislation then subsequently recodified into another bill which, I think, was SB 1117, the primary care legislation."

Senate Bill No. 1117 (1983-1984 Reg. Sess.) became chapter 1294 of the Statutes of 1983 and among other things added part 6 to division 1 of the Health and Safety Code. (Stats. 1983, ch. 1294, § 3, p. 5164.) Chapter 5 of that part dealt with "Grants-In-Aid for Clinics." There the Legislature declared that "there are approximately 300 community clinics and free clinics which provide primary health care at low cost for a significant portion of the medically underserved population." (Former Health & Saf. Code, § 1187, subd. (a).) "Increasingly large caseloads, the debilitating effects of inflation on purchased goods and services, and a lack of financial resources," the Legislature further found, "are forcing many community and

free clinics to curtail services needed in their communities." (Former Health & Saf. Code, § 1187, subd. (c).) "Recognizing the contribution of community and free clinics to the health care of Californians and the contribution of such clinics to lowering the costs of health care, it is in the interest of the people of this state to ensure continuation of clinic programs by providing necessary funding." (Former Health & Saf. Code, § 1187, subd. (d).) In aid of these findings, the Legislature directed that "[t]he [Department of Health Services] shall conduct a program of grants-in-aid for the followings purposes: [¶] (a) To assist in stabilizing the health care operations of community clinics and free clinics which provide a wide range of primary health care services. [¶] (b) To fund innovative and creative programs of such clinics designed to provide a high quality of health services at minimum cost. [¶] . . . Grants authorized pursuant to this chapter shall be limited in purpose to defraying operating expenses of the recipient clinic, including personnel costs, and for technical assistance provided to the recipient. Grants shall not be made or used for purchase of equipment, facility renovations, or purchase of land or buildings. . . ." (Former Health & Saf. Code, § 1187.1.)

This case involves the claimed illegal funding of a start-up clinic in Sacramento called Tlaloc Family Health Clinic (Tlaloc).

### Evidence Before the Grand Jury

At all relevant times defendant was employed as an analyst in the primary health care services branch of the Department.[3] He was responsible for farm worker projects and grant-in-aid and rural health programs. As the Attorney General notes, "[t]he People's theory of the case, as presented to the grand jury, was that [defendant], by means of subterfuge, submitted grant proposals on behalf of the Tlaloc Family Health Center in early 1988 and 1989 under the auspices of the AB 1317 funding program, a program which [defendant] was then administering. The People theorized that [defendant], because of his position as the AB 1317 program administrator, facilitated the approval process within the Department of Health Services in order to get start-up money for the Tlaloc clinic. AB 1317 funding is specially earmarked for clinic 'stabilization,' not start-up."

---

[3] We recount this evidence for background information only. The transcript of the proceedings before the grand jury was not in evidence before the trial court on the statute of limitations motion. As repeatedly explained in the context of suppression hearings, the testimony given at a preliminary examination is not in evidence at a special, de novo pretrial hearing unless the parties stipulate to its admission or the testimony is admissible under some exception to the hearsay rule. (See *People* v. *Johnson* (1984) 162 Cal.App.3d 1003, 1010, fn. 4 [209 Cal.Rptr. 78]; *Wilder* v. *Superior Court* (1979) 92 Cal.App.3d 90, 94 [154 Cal.Rptr. 494]; *People* v. *Cagle* (1971) 21 Cal.App.3d 57, 60 [98 Cal.Rptr. 348].) The same rules apply to the transcripts of the proceedings before a grand jury.

This theory was explained to the grand jury by the deputy attorney general before witnesses were called. "What I intend to do is present to you several witnesses, approximately 14 or 15 witnesses, who are going to testify about certain contracts or grant applications that were submitted to two different departments of the State of California. [¶] The first department is the Department of Health Services, particularly Primary Health Care Services Branch and specifically the Rural Health Care Services Division within that branch. [¶] What this case basically involves is a state employee named Francisco Lopez [defendant] who is an employee of the Department of Health Services who used his position inappropriately to enable a certain clinic called the Tlaloc Community Health Center which you will hear testified about in these proceedings which is a clinic in the South Sacramento area of the county. [¶] Back in approximately January or February of 1988, a group of individuals came together and formed a board of directors for the Tlaloc Community Health Center and proposed to start this clinic as a non-profit community health care organization. [¶] The problem that these people had was that they had no money. They did, however, have a friend named Francisco Lopez [defendant] who worked for the Department of Health Services. [¶] And I expect that the evidence in this case will disclose that [defendant] using his position and his knowledge and expertise within the Department of Health Services undertook to create grant applications and other documents which would then be submitted on behalf of the Tlaloc Community Health Center to the Department of Health Services. [¶] And thereafter, he personally participated in the processing of those documents which ultimately rewarded—resulted in the award of approximately $80,000 to the Tlaloc Community Health Center at a time when the Community Health Center did not exist other than on paper. [¶] It was not an operational facility, and funds were expended by the State of California from a fund of money that was to be used to stabilize clinics, that is, to provide money for clinics that were already in operation to continue in operation, and the Tlaloc Community Health Center was not such a clinic."

The evidence presented to the grand jury tended to support this theory. It established that defendant was instrumental in obtaining a grant award from the Department of $21,500 for Tlaloc for the period from March 15, 1988, to June 30, 1988. He was similarly instrumental in obtaining a second grant award for that entity, this one for $60,000 for the period from January 1, 1989, to June 30, 1989. Both of these grant awards carried the project title of "Stabilization of Health Care Operations." At the time of these grant awards, Tlaloc was not an operating clinic and did not have a license to operate a clinic from the state. Defendant's involvement in the award of these grants formed the basis for the first two counts of misappropriation of public funds.

In order to obtain these public funds, Tlaloc submitted six Department documents entitled "Prospective Payment Invoice." On each invoice defendant certified under penalty of perjury "[t]hat amounts as contained therein,

are properly payable and that such payments are authorized in the amount, for the period, and to the respective payees as indicated, under all governing laws and regulations." These certifications, executed from January to May 1989, formed the basis for the six perjury counts. Although it was established that Tlaloc received these funds, there was no evidence that defendant personally received any of them.

Mark Olenslager, a special agent for the State Department of Justice, testified he first became aware of possible improprieties at Tlaloc in May of 1991. But having no further information, he did not follow up on the matter. In July 1992, while researching the contracts with another clinic, he decided to pull the files on Tlaloc. These files showed that Belen Abeyta was the executive director of Tlaloc. Agent Olenslager recalled the name of Cynthia Abeyta in connection with the other inquiry and decided to ascertain whether there was any connection between the two. He therefore scheduled an interview of Belen Abeyta on July 17, 1992. That interview led to the seizure of the records of Tlaloc and to the discovery of the charged offenses against defendant.

### THE HEARING

The court began the hearing by announcing that "[t]his is on for special hearing on the limited issue of statute of limitations . . . ." Defendant first called Neptaly Taty Aguilera. Aguilera testified that he is the chief of the operations program branch of the Department of Health Services. When asked if he was working at the Department in 1988, Aguilera, on the advise of his counsel, asserted his Fifth Amendment right not to incriminate himself. He was then excused and Belen Abeyta was called. Apparently under the mistaken brief that the grand jury testimony was before the court, the court inquired, "What have you got that I haven't read already?" After an extended debate, the parties then stipulated that Abeyta would testify that in April and December 1988 she "made presentations to Mr. Aguilera concerning the development of the clinic, the needs of the clinic, and things related to the clinic." Abeyta was then excused and Sarah Erlach called.

Erlach testified she was a health services manager in the Department during the relevant times. She explained that when funds for programs under its auspices became available the Department would announce that applications could be submitted. Anyone interested in obtaining funding would then submit an application to the Department. The prospective applicants would often confer with members of the Department concerning the requirements of the programs. So it was that representatives of Tlaloc met with Aguilera in 1988.

After an application had been submitted, it would then undergo a review process. At least eight to ten members of the staff were involved in this review. The applications would be examined to determine if they met the legislative and regulatory criteria and then were rated and ranked. Following the group review, recommendations concerning the applications were then submitted to the next level of review, the divisional level. Aguilera, as the division chief, would then review the recommendations and either approve them or change the ranking. From there the applications went to the director's level where they were reviewed by a deputy director of the Department. It would not be possible, Erlach recounted, for one individual working in the Department to circumvent this process and arrange it so that the application would automatically be funded. Once an application was approved, a contract would be drafted following the terms of a model contract.

In Erlach's view, nothing illegal or unlawful occurred when the Department granted Tlaloc funds to develop a clinic. The governing statute does not use the word "start-up." Instead, the statutory restriction on the use of these funds relates to stability of the clinic and "one of the definitions of stability is development."

At the conclusion of the hearing, the court asked defense counsel: "But how does Mr. Aguilera know or should have known that what was going down was illegal? Because, from what Miss Erlach said, part of your client's job was to help facilitate these people who are applying for grants, to tell them how to apply and that kind of stuff." Counsel responded that once Aguilera "had the proposal before him for the development of a clinic with AB 1317 funds, he then should reasonably have known that this was not correct and he should have commenced that investigation as to who was the person that started this illegal process."

Despite his earlier misgivings, the trial judge agreed and granted the motion to dismiss. "I think that the—all the testimony shows that they should have known when this was going down, [defense counsel's] arguments were correct, what was happening. They knew that the agency, or Tlaloc, or however you pronounce [*sic*], it wasn't going."

DISCUSSION

### I. *Pleading Avoidance of the Statute of Limitations*

■ In California, the statute of limitations in criminal cases is jurisdictional. (*People* v. *McGee* (1934) 1 Cal.2d 611, 613-614 [36 P.2d 378]; see generally, 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses,

§ 368, p. 421.) As the *McGee* court explained, "[i]n civil actions the statute is a privilege which may be waived by the party. In criminal cases, the state, through its legislature, has declared that it will not prosecute crimes after the period has run, and hence has limited the power of the courts to proceed in the matter." (1 Cal.2d at p. 613.) "It follows," the *McGee* court went on, "that where the pleading of the state shows that the period of the statute of limitations has run, and nothing is alleged to take the case out of the statute, for example that the defendant has been absent from the state, the power to proceed in the case is gone." (*Id.* at pp. 613-614.)

As the high court later observed, "[t]he [*McGee*] decision was unanimous, and has been followed by this court without question for almost half a century. [Citations.] . . . The rule is a reflection of the fundamental principle of our law that 'the power of the courts to proceed'—i.e., their jurisdiction over the subject matter—cannot be conferred by the mere act of a litigant, whether it amount to consent, waiver, or estoppel [citations], and hence that the lack of such jurisdiction may be raised for the first time on appeal." (*People* v. *Chadd* (1981) 28 Cal.3d 739, 757 [170 Cal.Rptr. 798, 621 P.2d 837].)

■ Since the matter is jurisdictional, it has been held that the accusatory pleading must allege facts showing that the prosecution is not barred by the statute of limitations. (*People* v. *Crosby* (1962) 58 Cal.2d 713, 724 [25 Cal.Rptr. 847, 375 P.2d 839].) An accusatory pleading which seeks to avoid the bar of the statute of limitations by pleading the "discovery" provision of the Penal Code must allege facts showing: "(1) the date on which the offense was 'discovered'; (2) how and by whom the offense was 'discovered'; (3) lack of knowledge, both actual or constructive, prior to the date of 'discovery'; (4) the reason why the offense was not 'discovered' earlier." (*People* v. *Zamora*, *supra*, 18 Cal.3d at pp. 564-565, fn. 26.)

■ The indictment in this case undertook to meet these pleading requirements and defendant did not demur or otherwise challenge the pleadings. Instead, the hearing focused on who was a victim for purposes of discovery and whether adequate proof had been adduced. Accordingly, we first consider who is a victim for purposes of discovery of the crime and the running of the statute of limitations when the crime involves the government and then examine who has the burden of proof at the special hearing.

## II. *Discovery by Governmental Victim*

■ Penal Code section 803, subdivision (c), provides in relevant part: "A limitation of time prescribed in this chapter does not commence to run

until discovery of an offense described in this subdivision. This subdivision applies to an offense punishable by imprisonment in the state prison, a material element of which is fraud or breach of a fiduciary obligation or the basis of which is misconduct in office by a public officer, employee, or appointee, including, but not limited to, the following offenses: [¶] (1) Grand theft of any type, forgery, falsification of public records, or acceptance of a bribe by a public official or a public employee. [¶] (2) A violation of Section 72, 118, 118a, 132 or 134."

Although the statute refers to "discovery of an offense," the courts have read a requirement of diligence into the limitations statutes. (1 Witkin & Epstein, Cal. Criminal Law, *supra*, Defenses, § 375, p. 430.) "On its face the 1969 amendment [to Penal Code section 800] appears to set the limitation period running from the actual 'discovery' of a theft. The new provision has nevertheless been interpreted to include the same requirement of 'reasonable diligence' in discovering the facts of a theft that the courts have read into the 'discovery' provision of statute of limitations for tort actions based on fraud as set forth in Code of Civil Procedure section 338, subdivision 4. [Citation.] In that context we have held that the word 'discovery' is not synonymous with actual knowledge. [Citation.] 'The statute commences to run . . . after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. . . .' " (*People v. Zamora, supra*, 18 Cal.3d at pp. 561-562, fn. omitted.)

In *People v. Swinney, supra*, 46 Cal.App.3d 332, 344, we held that the statute starts to run "when the crime is discovered by either the victim or the responsible law enforcement authorities. Generally, it is the victim's reasonable diligence which excuses nondiscovery; official diligence becomes an issue only when suspicion arrives at the door of the officials responsible for the suspect's apprehension and prosecution."[4]

■ Ordinarily, the victim is the owner of the property or the person directly injured by the criminal acts. But when the owner is a business or governmental entity, the designation of a person or persons occupying the position of victim is less obvious. The selection of a victim from the chain of command cannot be too low because a mere coemployee, for example, may have no interest in reporting the criminal conduct of a fellow employee to his superiors or to the authorities. On the other hand, it cannot be set too high in the chain of command because a high-ranking official may never have the requisite knowledge to start the statute running and the purpose of the discovery statute would be defeated.

---

[4]As we made clear in *Swinney*, it is the discovery of the crime, and not just a loss, that triggers the running of the statute. "[D]iscovery of a loss, without discovery of a criminal agency, is not enough." (*People v. Swinney, supra*, 46 Cal.App.3d at p. 340.)

In *People* v. *Kronemyer* (1987) 189 Cal.App.3d 314 [234 Cal.Rptr. 442], the court confronted the issue of who could properly be described as a victim and hence charged with notice. There the defendant, an attorney and conservator for the elderly and senile owner, stole the conservatee's assets. Defendant contended that the statute of limitations had run because a friend and neighbor, who was also a director of a museum which was in turn a residual beneficiary of the conservatee's will, had discovered the thefts more than three years before the indictment was filed. He further contended that a niece-in-law, a beneficiary under the will, had also discovered the thefts more than three years before the prosecution was commenced. The *Kronemyer* court held that neither the friend nor the beneficiary could "qualify as discoverers for the purpose of triggering former section 800, subdivision (c)." (*Id.* at p. 330.)

The court began by noting that "[n]o California reported decisions have specifically addressed whose discovery triggers the operation of the statute or the scope of the term 'victim.'" (*People* v. *Kronemyer, supra,* 189 Cal.App.3d at p. 331.) Defendant in that case contended that "the statute should begin to run on discovery by anyone who, because of some special interest in the victim or the subject matter, is reasonably likely to discover and report the offense. He contends that only when no such other person discovers the crime should the statute be deferred until discovery by law enforcement." (*Id.* at p. 332.) The court rejected the argument. "We do not believe fairness and common sense require a class of 'discoverers' to include all members of the general public, neighbors, residuary beneficiaries or nieces-in-law of victims who fail to investigate or advise law enforcement officials of mere suspicions of wrongdoing." (*Id.* at p. 333.) Instead, the court concluded the benefits of a discovery statute "should extend no further than those persons who are direct victims, persons having a legal duty to report and investigate crime, and those persons who are clothed with a status imposed by law as guardian, conservator or equivalent, in the absence of express statutory direction."[5] (*Id.* at pp. 334-335.)

In our view, the same rules should apply to crimes involving misappropriation of public funds and perjury in the execution of official documents relating to public funds. We hold therefore that in cases involving fiscal crimes against government, a victim for purposes of the discovery provisions of Penal Code section 803, subdivision (c), is a public employee occupying a supervisorial position who has the responsibility to oversee the

---

[5]The *Kronemyer* court noted that "California appears to be one of only five of at least twenty-one states with a tolling statute related to discovery which fails to designate the specific persons who qualify as 'discoverers.'" (189 Cal.App.3d at p. 331, fn. 7.)

fiscal affairs of the governmental entity and thus has a legal duty to report a suspected crime to law enforcement authorities.[6]

 The evidence in this case establishes that Neptaly Aguilera, as the division chief of the designated branch of the Department, was responsible for reviewing the grant applications and approving or disapproving them. Since he occupied a supervisorial position and was imbued with the authority to approve the grant applications, he bore the responsibility of reporting suspected criminal activity to the police. The remaining question is whether he was put on notice of the alleged illegality.

 On that question, "[t]he crucial determination is whether law enforcement authorities or the victim had actual notice of circumstances sufficient to make them suspicious of [criminal activity] thereby leading them to make inquiries which might have revealed the [criminal activity]." (*People* v. *Zamora, supra,* 18 Cal.3d at p. 571, italics omitted.) The victim has the requisite actual notice when he has knowledge of facts sufficient to make a reasonably prudent person suspicious of criminal activity. (*Id.* at p. 562.) The resolution of that question in this case depends upon who had the burden of establishing such notice.

The Attorney General argues that defendant bore the burden of proof and "failed to meet his burden of proving *as a matter of law* that the statute of limitations barred the prosecution on the indictment." (Italics in original.) Defendant does not respond directly to this argument, contending instead the Department was the "legal discoverer" and it had constructive notice of the crimes in 1989. We turn to the burden of proof question.

### III. *Burden of Proof at Special Pretrial Hearing*

 It is settled that at trial the prosecution bears the burden of proving that the charged offense was committed within the applicable period of limitations. (*People* v. *Crosby, supra,* 58 Cal.2d at p. 725.) The burden of proof on this issue is proof by a preponderance of the evidence. (*People* v. *Zamora, supra,* 18 Cal.3d at p. 565, fn. 27.) The People also bear the burden to hold a defendant to answer before a magistrate or to obtain a grand jury indictment, although this burden is described as one of establishing probable cause. "[I]n order to hold a defendant over for trial the People bear the

---

[6]In the unlikely event that there is no such supervisor or in cases in the which the supervisor either is the accused or aided and abetted the accused or conspired with him, the statute starts to run upon discovery by law enforcement authorities. Although Aguilera invoked his privilege against self-incrimination on the advice of his counsel, there was no evidence that he aided and abetted defendant or that he conspired with him to commit the charged offenses.

burden of producing evidence (either before the grand jury or at the preliminary hearing) which demonstrates that there is probable cause to believe that the prosecution is not barred by the statute of limitations." (*Id.* at pp. 564-565, fn. 26.)

The requirement of specificity in pleading the facts of discovery serves "to clarify the task of determining whether *any* diligence has been shown, particularly because the People bear the burden of proving a negative proposition, i.e., that knowledge of the offense could not have been obtained at an earlier time. With the *basic* facts on the 'discovery' issue set forth in the pleading it will be much easier to then consider the People's additional proof on the issue which will be presented either to the grand jury or before the magistrate." (18 Cal.3d at pp. 564-565, fn. 26, italics in original.)

■ The trial court ruled that the prosecution had met its burden of proof on the statute of limitations issue before the grand jury and hence denied defendant's motion under Penal Code section 995 to set aside the indictment. In addition, as we have noted, the prosecution bears the burden of proof by a preponderance of the evidence at the trial on the merits. The remaining question is whether the prosecution bears the same burden on a pretrial motion by defendant to dismiss the indictment.

■ In *Zamora*, the high court considered whether a nonstatutory, pretrial motion to dismiss could be made on the ground that the prosecution was barred by the statute of limitations as a matter of law. The court held that the trial court had discretion to hold a hearing on the limitation issue before proceeding to the trial of the general issues. "We are aware of our past statements that the limitation issue is, upon proof of probable cause to believe that the statute is not a bar, a question for the trier of fact. But the limitation question is a basic jurisdictional issue and the bar thereof is aimed as much at the prevention of untimely prosecutions as it is at the prevention of untimely convictions. If it appears possible that the evidence will establish *as a matter of law* that the period of limitation has run, then judicial economy may be far better served if the issue is resolved at the earliest possible stage of the proceedings rather than waiting until an entire trial on multiple issues is completed. Moreover, the determination of the trial court after such a hearing will be similar to that on a motion for a directed verdict (§§ 1118, 1118.1) without the necessity of first litigating the merits of the case. We conclude therefore that a trial court has within its discretion the power to hold an evidentiary hearing for the purposes of determining whether *as a matter of law* the statute of limitations bars the prosecution. At such a hearing, it may properly be considered whether the reasonable diligence requirement of section 800 has been complied with." (18 Cal.3d at

pp. 563-564, fn. 25, italics added.)[7] ▉ Although the bar of the statute of limitations in a facially sufficient pleading is ordinarily an evidentiary question of fact, if the evidence is uncontradicted at the special hearing the issue then becomes a question of law. (*People* v. *Padfield* (1982) 136 Cal.App.3d 218, 226 [185 Cal.Rptr. 903].) In such a case, the trial court may then decide the issue. If the court rules that the statute has run and dismisses the information or indictment, then the People may appeal that ruling. (Pen. Code, § 1238, subd. (a)(8).) On the other hand, if the evidence either establishes that the statute has not run or is conflicting on the question, the court should deny the motion because there has been no proof that the statute has run as a matter of law. "If the People prevail after such a hearing, then the limitation issue must still be resolved by the jury if it remains disputed by the defendant." (*People* v. *Zamora, supra,* 18 Cal.3d at pp. 563-564, fn. 25.)

▉ This burden of proving that the limitation period has run as a matter of law is different from the prosecution's burden to prove by a preponderance at trial that the statute has not run. "The phrase 'preponderance of evidence' is usually defined in terms of probability of truth, e.g., 'such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth.' [Citations.]" (1 Witkin, Cal. Evidence (3d ed. 1986) Burden of Proof and Presumptions, § 157, p. 135.) Under the preponderance of evidence standard, the prosecution is entitled to prevail at trial even if the evidence is conflicting (and thus does not establish the point as a matter of law) if the fact finder believes the prosecution's evidence and that finding is supported by substantial evidence. As the *Zamora* court noted, "[t]he jury's findings on the 'discovery' issue were on questions of fact and on appeal they are tested by the substantial evidence standard." (*People* v. *Zamora, supra,* 18 Cal.3d at p. 565.) Since the burden is not the same, we turn to the question of who has the burden at a discretionary hearing.

▉ By making a pretrial motion to dismiss on the ground of the statute of limitations defendant seeks to prove that there is no factual dispute

---

[7]Under the provisions of Penal Code sections 1118 and 1118.1, a defendant may move for a judgment of acquittal after the close of the prosecution's evidence in a case tried without a jury and at the close of evidence on either side in a case tried before a jury. If the motion is denied, "the defendant may offer evidence without first having reserved that right." (Pen. Code, §§ 1118, 1118.1.) "The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." (*People* v. *Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13 [36 Cal.Rptr.2d 474, 885 P.2d 887].)

concerning this question and thus a full trial on the merits of the charges should be avoided. This motion is the functional equivalent of a motion for summary judgment in the civil context. Under the summary judgment statute, a movant is entitled to have the motion granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) On the other hand, if there is a triable controversy on a material fact, the motion for summary judgment must be denied. (Code Civ. Proc., § 437c, subd. (g).) The same is true of the special pretrial motion to dismiss on the ground of the statute of limitations. Defendant is entitled to prevail only if there is no triable issue on the question.

By such a pretrial motion, the defendant seeks to avert a trial even though the prosecution has carried its burden on the statute of limitations issue before the grand jury or the magistrate. Given this procedural posture of the case, the defendant bears the burden of proving that the statute of limitations has run as a matter of law. Assigning this burden to defendant is consistent with the usual rules governing motions. As expressed in the Evidence Code, "[e]xcept as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Evid. Code, § 500.) Thus, "[o]n all motions the burden is on the moving party . . . ." (*Scott* v. *Renz* (1945) 67 Cal.App.2d 428, 431 [154 P.2d 738]; accord, *People* v. *Carson* (1970) 4 Cal.App.3d 782, 785 [84 Cal.Rptr. 699]; 60 C.J.S., Motions & Orders, § 37(5), pp. 48-49.) Although the prosecution bears the ultimate burden at trial, in a pretrial motion to dismiss the accusatory pleading, the defendant is seeking the extraordinary relief of dismissal without trial and consequently bears the burden of establishing his entitlement to that relief. If the evidence is in conflict on the question or if defendant simply fails to establish that the statute has run as a matter of law, then the motion should be denied.

We conclude that defendant failed to carry his burden of establishing that Aguilera or any other supervisorial employee knew or should have known that the application for funds for Tlaloc was illegal and that granting the application would lead to the misappropriation of public funds. Aguilera himself, having taken the Fifth Amendment, did not testify about the events in questions or his knowledge of them. Erlach's testimony tended to exonerate the defendant of any wrongdoing and thus cast no light on when Aguilera knew or should have known of any impropriety. Finally, Abeyta's abbreviated testimony about meeting with Aguilera and discussing the development, needs and other things concerning the clinic is too vague and sketchy to put anyone on constructive notice of any possible illegality, much less imparting actual notice of criminality. On this minimal record, defendant failed to establish that the statute of limitations had run as a matter of

law. Consequently, the order dismissing the indictment on the ground of the statute of limitations cannot stand.

## DISPOSITION

The order dismissing the indictment is reversed and the cause remanded to the trial court with directions to enter a new and different order denying defendant's motion to dismiss and then to proceed according to law.

Puglia, P. J., and Morrison, J., concurred.