Filed 3/9/15  P. v. Jacobs CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B249102 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.  BA394442) |
| v. | |
| ROY LEWIS JACOBS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia Martin, Judge.  Affirmed.

David Reis Mishook, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael C. Keller and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Roy Lewis Jacobs challenges his convictions for perjury, identity theft, and false personation, arguing that the prosecution failed to prove that the applicable statute of limitations had not run on the charges against him. We reject his contention and affirm.

## RELEVANT PROCEDURAL BACKGROUND

On January 7, 2013, a nine-count amended information was filed, charging appellant with perjury and offenses involving the misappropriation of the identity of Dennis Egbert Tillett, Jr. The information alleged that on specified dates between December 23, 1999 and April 15, 2008, appellant engaged in perjury in applying for driver's licenses and state identification cards (Pen. Code, § 118, subd. (a)), and that on July 13, 2005, appellant engaged in identity theft and false personation regarding Tillett (Pen. Code, §§ 530.5, subd. (a), 529; counts 7 and 9).[1] Accompanying the charges were allegations that appellant had been convicted of two serious felonies under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and had served prison terms for four prior felony convictions (§ 667.5, subd. (b)). For purposes of the applicable statute of limitations (§§ 801.5, 803, subd. (c)), the information alleged that the offenses were not discovered until March 7, 2011. Appellant pleaded not guilty and denied the special allegations.

The trial was bifurcated with respect to the special allegations regarding appellant's prior convictions. After a jury found appellant guilty on all counts, the trial court found the allegations under the Three Strikes law to be true, and found the prior prison term allegations not to be true. Appellant was sentenced to a total term of 13 years in prison.

---

[1] All further statutory citations are to the Penal Code.

**FACTS**

A. *Prosecution Evidence*

Dennis Egbert Tillett, Jr., testified that he was acquainted with appellant through a sibling. According to Tillett, he first obtained a California class C driver's license in 1998. Thereafter, he maintained the same residence, and renewed his license by visiting the offices of the California Department of Motor Vehicles (DMV). In 2007, Tillett applied for a California class B driver's license, but retained his class C license.

In June 2010, Tillett's insurance company told him that his premiums were to increase because he had several driving tickets. When he obtained the tickets, he discovered that they had been issued in Long Beach, which he did not visit. Tillett notified his local police department and the DMV. Later, in December 2010, he filed a report regarding the tickets with the Los Angeles Police Department.

In investigating the tickets, Tillett learned that a Nevada driver's license had been issued in his name, although he had applied for no such license. In December 2010, he went to the office of the Nevada Department of Motor Vehicles in Las Vegas, where he spoke to an investigator regarding the driver's license in his name. When the investigator showed Tillett a photograph of the person who had applied for the license, Tillett recognized that person as appellant. The Nevada Department of Motor Vehicles suspended the license.

In early 2011, after returning to California, Tillett met with DMV Investigator Avo Hagopian. Hagopian testified that on March 7, 2011, Tillet came to his office and filed a complaint regarding the theft of his identity. According to Hagopian, although Tillett knew that a Nevada driver's license had been fraudulently obtained in his name, he was unaware of any similarly fraudulent California driver's license.

3

Hagopian further testified regarding the procedure for obtaining a California driver's license or identification card at a DMV office. An applicant first completes a DL-44 application form with the assistance of a DMV "technician." Aside from requesting certain personal information, the DL-44 form requires applicants to state whether they have applied for a driver's license or identification card under another name within the previous ten years. Following a review of the completed DL-44 form by the technician and a DMV manager, the applicant signs the form, and thereby executes a declaration under penalty of perjury that the information provided on the form is true. The applicant is then directed to a second DMV technician at the "camera window," where the applicant's "soundex" photo and thumbprint are taken.

According to Hagopian, after meeting with Tillett, he secured Tillett's prior DL-44 applications and soundex photos, and contacted the Nevada Department of Motor Vehicles. After noticing that the soundex photo relating to a July 13, 2005 DL-44 form did not match Tillett's other soundex photos, Hagopian asked Tillett to visit his office. Tillett identified appellant as the person shown in the July 13, 2005 soundex photo. Hagopian then obtained appellant's prior DL-44 forms and soundex photos under the name "Roy Lewis Jacobs." In examining appellant's DMV's records and other available information, Hagopian learned that appellant had also completed DL-44 forms using the name "Albert Eddie Jacobs."

Hagopian's investigation disclosed the following conduct by appellant. In 1993, appellant obtained a driver's license in his own name. Thereafter, commencing in 1999, appellant secured a total of seven driver's licenses and identification cards using three names, while stating on the pertinent DL-44 forms that within the previous ten years, he had never submitted applications under another name. In 1999 and 2000, appellant obtained a driver's license in the name of "Albert Eddie Jacobs," and then obtained two duplicate driver's licenses in his

4

true name (counts 1 through 3).  In early 2005, appellant secured an identification card in the name of "Albert Eddie Jacobs" and a duplicate driver's license in his true name (counts 4 and 5).  On July 13, 2005, appellant applied for, and obtained, a driver's license in Tillett's name (counts 6, 7, and 9).  Later, on April 15, 2008, appellant secured a duplicate driver's license in his true name (count 8).[2]

B.  *Defense Evidence*

Appellant presented no evidence.

## DISCUSSION

Appellant contends the charges against him were time-barred under section 801.5, which states the limitations period applicable to his crimes.  He argues that there is insufficient evidence to support the jury's determination that the underlying action was initiated within the limitations period.

A.  *Governing Principles*

Section 801.5 provides that the prosecution of the offenses charged against appellant "shall be commenced within four years after discovery of the commission of the offense."  (§§ 801.5, 803, subd. (c).)  Although the Penal Code does not specify whose discovery of the offense triggers the limitations period, "case law holds that the limitations period begins running on the date either the 'victim' or responsible 'law enforcement personnel' learn of facts which, if

---

[2]     The prosecution also submitted testimony from Angela Hilliard, a fingerprint expert, who stated that the fingerprints relating to the applications in appellant's true name and in Tillett's name matched appellant's fingerprints, but that the fingerprints relating to the applications in the name of "Albert Eddie Jacobs" were from a different person.

5

investigated with reasonable diligence, would make that person aware a crime had occurred." (*People v. Moore* (2009) 176 Cal.App.4th 687, 692, italics deleted, quoting *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 330-331, italics deleted, disapproved on another ground in *People v. Whitmer* (2014) 59 Cal.4th 733, 742.) Under this principle, the crucial determination is not the date on which the crime was actually discovered, but the date on which "law enforcement authorities or the victim had actual notice of circumstances sufficient to make them suspicious of [the offense,] thereby leading them to make inquiries which might have revealed the [offense]." (*People v. Zamora* (1976) 18 Cal.3d 538, 571-572, italics deleted; *People v. Wong* (2010) 186 Cal.App.4th 1433, 1444-1445.)

At trial, the prosecution had the burden of showing by a preponderance of the evidence that the charged offenses were committed within the limitations period. (*People v. Lopez* (1997) 52 Cal.App.4th 233, 248.) The jury was instructed with a modified version of CALCRIM No. 3410, which stated that with the exception of count 8 -- which alleged that on April 15, 2008, appellant engaged in perjury in applying for a driver's license -- appellant could not be convicted of the crimes charged against him if they should have been discovered more than four years prior to the action's commencement on February 28, 2012. We review the jury's findings regarding the timeliness of the charges for the existence of substantial evidence. (*People v. Wong*, *supra*, 186 Cal.App.4th at p. 1444.)

B. *Analysis*

Appellant maintains the prosecution failed to prove that the charges against him were asserted within the limitations period, arguing that the evidence at trial showed that DMV employees should have discovered his criminal conduct in 2005

6

or 2007, more than four years before the underlying action commenced. As explained below, we reject his contention.[3]

Appellant's challenge fails for two reasons. Regarding his conviction on count 8, the evidence at trial established that appellant committed the pertinent offense on April 15, 2008, less than four years prior to the commencement of the underlying action on February 28, 2012. As appellant does not dispute the date of the crime or the commencement of the action, the action was not untimely with respect to count 8. (*People v. Price* (2007) 155 Cal.App.4th 987, 996.) Regarding appellant's convictions on the remaining counts, the evidence at trial supports the reasonable inference that no victim or law enforcement official should have known of appellant's crimes earlier than June 2010, when Tillett first discovered the tickets issued in Long Beach.[4]

Appellant contends the DMV had notice of his criminal conduct on July 13, 2005, when he obtained a driver's license in Tillett's name, or in 2007, when Tillett sought a class B license in his own name. His arguments rely on Hagopian's testimony regarding the information available to DMV employees processing DL-44 forms. At trial, Hagopian stated that the DMV employees who process a request for a driver's license or identification card have limited access to the applicant's prior DMV records. If the applicant has previously applied for a driver's license or identification card, the DMV employees have access solely to

---

[3]      In addition to asserting a defense under section 801.5 at trial, appellant raised that defense in a pretrial motion to set aside the second amended information (§ 995), which the trial court denied. As appellant has not challenged that ruling, he has forfeited any contention of error regarding it.

[4]      Because June 2010 is within the limitations period, it is unnecessary for us to identify precisely when appellant's crimes should have been discovered, for purposes of section 801.5.

7

the applicant's most recent personal information; furthermore, only the technician at the "camera window" can view the soundex photo relating to the most recent DL-44 form.

Noting Hagopian's testimony, appellant argues that on July 13, 2005, the pertinent DMV technician processing his application under Tillett's name should have recognized that he was not Tillett due to discrepancies between his appearance and Tillett's prior soundex photo. Similarly, appellant argues that in 2007, the DMV technician processing Tillett's application for a class B license should have recognized that Tillett was not the person in the soundex photo relating to the July 13, 2005 application.

These arguments misapprehend our review for substantial evidence. We do not engage in independent factfinding, but instead affirm the jury's determinations if they are supported by any logical inferences grounded in the evidence. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11-14.) Here, the record supports reasonable determinations that the facts available to the DMV employees in 2005 and 2007 triggered no inquiry into potential criminal activity.

In view of Hagopian's testimony, on each occasion, the pertinent DMV technician was required to compare the applicant's actual appearance with a single soundex photo and accompanying physical description. Thus, on July 13, 2005, when appellant sought a driver's license in Tillett's name, the DMV technician had access only to Tillett's soundex photo and physical description relating to the most recent DL-44 form, which was dated March 1999. Similarly, in 2007, when Tillett applied for a class B license, the DMV technician had access only to appellant's soundex photo and physical description relating to the July 13, 2005 DL-44 form.

Under those circumstances, those DMV employees reasonably failed to distinguish appellant from Tillett. To begin, we note that their faces manifest a strong resemblance, as shown by Tillett's 2007 soundex photo and appellant's July

8

13, 2005 soundex photo. The photos display oval-faced individuals with similar complexions, eyes, hair, and other features. Although Tillett's face is fuller, that difference is attributable to a difference in weight: whereas Tillett specified his weight in 2007 as 375 pounds, appellant -- in the name of Tillett -- claimed to weigh 325 pounds on July 13, 2005. Furthermore, both men are tall: Tillett's 2007 physical description identifies his height as six feet four inches, and appellant's DMV records in his true name and in the name of "Albert Eddie Jacobs" identify his height variously as six feet two inches or six feet three inches.

The jury thus reasonably found that the pertinent DMV technicians lacked notice of appellant's misconduct. In 2007, Tillett stated that he was six foot four inches tall and weighed 375 pounds. The DMV technician processing Tillett's 2007 DL-44 form had access only to appellant's July 13, 2005 soundex photo and the related physical description, which stated that Tillett was six feet five inches tall and weighed 325 pounds. In view of the resemblance between appellant and Tillett, those minor differences triggered no reasonable suspicion of a crime. (*People v. Petronella* (2013) 218 Cal.App.4th 945, 957 [for purposes of section 801.5, minor discrepancies in defendant's payroll records noted by employees of quasi-governmental agency did not constitute notice of defendant's financial crimes].)

The same is true regarding the pertinent DMV technician who processed appellant's July 13, 2005 application in Tillett's name, even though Tillett's March 1999 application and soundex photo were not admitted into evidence. In view of the evidence submitted at trial, the jury could reasonable infer that the DMV technician had access only to Tillett's March 1999 soundex photo and a related physical description akin to Tillett's 2007 description. Because appellant resembles Tillett, any dissimilarities between the person in the photo and appellant were reasonably attributed to aging and changes in weight (if any).

9

In a related contention, appellant argues that the DMV technicians, who were trained to detect false applications, had adequate notice of criminal activity because Hagopian, in reviewing Tillett's DMV records, recognized that the July 13, 2005 soundex photo did not depict Tillett. However, Hagopian and the DMV technicians were not similarly situated in terms of training or in the facts available to them. According to Hagopian, DMV technicians who process DL-44 forms do not receive training comparable to that given DMV criminal investigators. More important, Hagopian identified the anomalous July 13, 2005 soundex photo only after being alerted to the potential fraud and reviewing Tillett's entire DMV record, which included DL-44 forms completed in 1998, 1999, 2005, and 2007, and the related soundex photos. In contrast, the DMV technicians had access only to the then-most recent soundex photo and physical description of Tillett. As explained above, the jury reasonably concluded that the minor discrepancies between that information and the applicant's visible appearance were insufficient to alert the DMV employees to appellant's criminal misconduct. In sum, there is sufficient evidence to support the jury's determination that the offenses charged against appellant were not time-barred.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.

11