[No. H003602. Sixth Dist. May 11, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL D. CROSSMAN, Defendant and Appellant.

**COUNSEL**

Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, and George L. Mertens, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Frances M. Dogan and David H. Rose, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**AGLIANO, P. J.**—Defendant Paul D. Crossman, former senior deputy coroner of Monterey County, appeals from the trial court's judgment convicting him of three counts of grand theft by a public officer. (Pen. Code, §§ 504/487.)

The sole issue presented is whether the trial court correctly determined that the applicable three-year statute of limitations (Pen. Code, § 801) did not bar prosecution of the offense charged in count 5 of the information.

The information filed on January 29, 1987, alleged in pertinent part that on or about April 28, 1982, defendant misappropriated a number of gold coins, the property of a decedent's estate; that the crime was not actually discovered until August 14, 1986; and that in the interim period the People did not have constructive knowledge of the offense. Under these circumstances, commencement of prosecution in 1987 was timely. (Pen. Code, §§ 803, subd. (c), 804.)

*Facts*

The relevant evidence is essentially undisputed. On May 15, 1981, Cyril O'Connor purchased Canadian maple leaf gold coins for $33,879 with funds withdrawn from his bank account. He liquidated the bank account so that his wife could qualify for governmental medical benefits. O'Connor

disclosed the gold purchase to his neighbor, Reiny Lamm, and also told him that he hid the coins under the stove in his mobilehome.

Mr. O'Connor died on April 26, 1982. As the deputy coroner assigned to investigate O'Connor's death, defendant spent considerable time in O'Connor's mobilehome. As later events were to disclose, defendant took advantage of his access to the home to find and convert at least some of the gold coins which O'Connor had acquired.

On July 30, 1982, Alonzo Real, an employee of the public guardian, was appointed conservator of the estate of Tirzah O'Connor, the surviving wife of Cyril O'Connor. Mr. Real immediately began to identify and gather Cyril's property on her behalf.

The crucial inquiry in this case is whether the statute of limitations commenced to run by virtue of information which came to the attention of Mr. Real. The People and the defendant agree Real was a potential "discoverer" for purposes of the tolling provision of Penal Code section 803, subdivision (c).

While Real was taking inventory of property in the O'Connor home one day, Mr. Lamm arrived and told Real he suspected defendant had taken the gold coins. Lamm told Real that defendant had denied finding any gold coins in the mobilehome. All that defendant acknowledged finding was a coin collection which he turned over to the public administrator. Lamm told Real he had observed defendant remove some boxes and packages from the home and said he believed defendant was lying when he explained his extended presence in the home by saying he was taking pictures. Lamm did not see a camera. Lamm also noted that Mr. O'Connor's metal detector had been moved from the place it was usually stored. Lamm himself had never seen the gold coins and did not know how many there were.

Real admitted that Lamm had told him about the gold coins and about seeing defendant take some small boxes from the trailer. Real, Lamm, and an estate auctioneer, Thomas Sydes, had all searched the home carefully, but found no coins or any evidence that they had been there.

Real and Sydes testified that claims of missing property were not unusual during the processing of decedent estates. In Real's experience the removal of items from the home of a deceased person could be a legitimate part of the coroner's duties. In fact, defendant here had accounted for a coin collection he had removed from the mobilehome. Real thus dismissed as unfounded Lamm's suspicion of the deputy coroner and his belief that gold coins existed and had been stolen. Real's conclusion was also based on his

trust in defendant, as the senior deputy coroner who was responsible for dealing with missing property complaints.

Subsequent events, however, disclosed Real was mistaken. On August 20, 1986, an officer of the Moraga Police Department informed the Monterey County District Attorney's office that the department had received a pistol and several pieces of jewelry from a retired Berkeley police officer who had received them from a LeeAnn Lane. Miss Lane reported that defendant had given her a box containing these items approximately two years earlier when she was his girlfriend. When she heard defendant was a suspect in estate thefts she opened the box and turned it over to her police officer friend in Berkeley.

Examination of the pistol revealed it had been taken from the scene of a murder investigation participated in by defendant in September 1984. Theft of the gun was charged in count 1 of the information. The jewelry was traced to the estate of Olga Chebyshowa who died on September 4, 1984. The evidence disclosed that defendant, as deputy coroner, had also assisted in the investigation of Chebyshowa's death. Theft of the jewelry was charged in count 2 of the information.

Further investigation of defendant's conduct then revealed the following evidence, which served to convict defendant of the theft of O'Connor's gold coins charged in count 5. One evening in 1982, defendant returned home and excitedly showed his wife a box of gold coins with leaf markings. In the summer of 1982, defendant showed his daughter a box of gold coins with leaf markings. The coins were hidden in his bedroom. Defendant and his wife were preparing to take a trip to Hawaii, so defendant instructed his daughter to sell the coins if anything were to happen to her parents.

## Discussion

The trial court determined that the facts known by Alonzo Real in 1982 were not sufficient to impart to him constructive knowledge of the commission of a crime.

■ It is the burden of the prosecution to prove by a preponderance of the evidence that the "legal discoverer" (1) knew no facts constituting constructive notice of the crime, (2) exercised reasonable diligence, and (3) did not negligently perform his duties so as to allow the crime to remain undiscovered. In other words, " 'The statute commences to run . . . after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry.' " (*People* v. *Zamora* (1976) 18 Cal.3d 538, 562 [134 Cal.Rptr. 784, 557 P.2d 75], quoting *Hobart*

v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 437 [159 P.2d 958]; Civ. Code, § 19.) The identity of the perpetrator of the crime is not an element of the discovery issue. The question is whether there is sufficient knowledge that a crime has been committed. (*Zamora, supra,* at p. 572, fn. 33.)

■ Defendant contends that whether Mr. Real exercised reasonable diligence is a mixed question of fact and law and therefore the ultimate conclusion whether reasonable diligence was exercised is essentially a legal question upon which this court should exercise its independent judgment, while giving deference to the underlying facts found and inferences drawn by the trier of fact. "Once the court determines that the facts stated in the pleadings are sufficient and do not show, *as a matter of law,* that in the exercise of reasonable diligence the plaintiff could have discovered the fraud at an earlier time then the reasonable diligence question becomes an issue for the trier of fact. [Citations.]" (*Zamora, supra,* 18 Cal.3d at p. 562; italics added.)

■ Proceeding on that premise we nevertheless agree with the trial court's conclusion that Real had neither actual nor constructive notice of the crime more than three years before commencement of prosecution. It is true that Real was told O'Connor had gold coins and he placed them under the stove in his home. Real presumably could have verified the liquidation of O'Connor's bank account and the availability of funds for the purchase on May 15, 1981. In addition, Mr. Lamm expressed suspicion of defendant, based on (1) the amount of time defendant spent in the O'Connor home, (2) defendant's removal of some boxes and packages, (3) the absence of a camera when defendant said he was taking pictures, and (4) the removal of decedent's metal detector from its usual resting place.

Is this information sufficient to have placed Real on constructive notice that gold coins were missing from the estate due to criminal conduct, thereby triggering commencement of the limitations period? We believe not.

"For the purposes of triggering the statute of limitations under a similar tolling statute, a discovery was held not to have occurred even though officials learned substantial facts which would have only created a suspicion of wrongdoing. (*Com.* v. *Hawkins* (1982) 94 Pa.Super 57 [439 A.2d 748].) Similarly, in *People* v. *Swinney* [1975] 46 Cal.App.3d, 332, 337 [120 Cal.Rptr. 148], the court concluded the triggering of a period of limitations on concealed thefts requires more than mere discovery of a loss; it requires an awareness the loss occurred *by virtue of a criminal agency.* Thus, 'discovery' calls for awareness of the crime, not merely the loss." (*People* v. *Kronemyer* (1987) 189 Cal.App.3d 314, 334 [234 Cal.Rptr. 442]; italics in original.)

All that reasonably should have appeared to Real in April 1982 was that, in May 1981, Mr. O'Connor may have acquired gold coins valued at approximately $33,000 and that he may have hidden them under the stove in his home. Real found no trace of coins when he searched in July or August of 1982. He knew defendant had been in the home immediately after O'Connor's death, but aside from that fact he had nothing but speculation on which to suspect theft. The factors underlying Lamm's suspicion did not provide Real with a reasonable ground to suspect that defendant, or anyone else for that matter, had stolen any coins. Further, there was no evidence precluding the possibility that O'Connor had spent or otherwise disposed of any coins he may have had. Indeed, it was O'Connor's express purpose to conceal his assets so that his wife could qualify for government medical benefits.

It may be argued that Real should have confronted defendant. But defendant had already responded to Lamm's inquiry by saying he had only found a coin collection which he delivered to the public administrator. We thus fail to see, and defendant does not suggest, what inquiry Real might have made in the exercise of reasonable diligence which would have led to discovery of the crime. Hindsight now discloses that defendant's wife and daughter had information in 1982 which would have revealed the crime. We do not believe, however, that Real then had sufficient information which would have prudently led him to interview members of defendant's family.

Defendant's official position of trust must also be considered here. He was the senior deputy coroner whose duty, among others, was to protect the very property he had stolen. In an analogous circumstance the Supreme Court observed: "Another pertinent factor is that there was a fiduciary relationship between the parties at the time of the fraudulent representations. Although the general rules relating to pleading and proof of facts excusing a late discovery of fraud remain applicable, it is recognized that in cases involving such a relationship facts which would ordinarily require investigation may not excite suspicion, and that the same degree of diligence is not required." (*Hobart* v. *Hobart Estate Co., supra,* 26 Cal.2d 412, 439-440.)

Defendant used his official position to commit theft and to lend credence to his representation that, having looked for gold coins, he found none. It ill serves defendant to now claim that the police should have seen through his deceit.

We discern no error in the trial court's ruling.

The judgment is affirmed.

Cottle, J., and Elia, J., concurred.

A petition for a rehearing was denied May 30, 1989, and appellant's petition for review by the Supreme Court was denied July 19, 1989.