[No. B207616. Second Dist., Div. Eight. Aug. 11, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
KYRON J. MOORE, Defendant and Appellant.

COUNSEL

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, James William Bilderback II and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BIGELOW, J.**—The People filed an information charging Kyron J. Moore with one count of grand theft and 10 counts of perjury by declaration. Moore joined a codefendant's motion to dismiss all counts based on the statute of limitations. The trial court denied the motion, following which Moore pled no contest to the one grand theft count. On appeal, Moore challenges the trial court's ruling on the statute of limitations. We affirm.

## FACTS

During the early 2000's, the County of Los Angeles Department of Public Social Services (DPSS) contracted with Crystal Stairs, a nonprofit child development agency, to help the department (along with other agencies) distribute funds to childcare providers. In accord with the terms of their contract, Crystal Stairs received funds from DPSS, and then distributed those funds to childcare providers in accord with directives from DPSS. Between October 1, 2000, and March 31, 2002, Michelle Davis, Moore's sister, regularly applied to Crystal Stairs under penalty of perjury for childcare funds, falsely reporting that Moore was caring for Davis's four children. Crystal Stairs, in turn, disbursed $44,026 to Moore, and he and Davis split the money. During this same timeframe, the Long Beach YMCA actually provided care for Davis's children.

On May 8, 2002, a childcare coordinator at the YMCA mailed a letter to Crystal Stairs, along with supporting documentation, showing that Davis's

children had been receiving childcare at the YMCA.[1] Crystal Stairs received the YMCA's letter on May 10, 2002. On May 28, 2002, a fraud prevention specialist at Crystal Stairs referred the matter to DPSS for investigation, because DPSS was "the only one that [could] conduct an investigation."

On May 17, 2006, the People filed a criminal complaint against Davis and Moore. On January 23, 2007, the People filed an information jointly charging Davis and Moore with one count of grand theft of personal property, "to wit $44,026 . . . in child care funds the property of Crystal Stairs," which was alleged to have occurred "[o]n or between October 1, 2000 and March 31, 2002." The information also charged Davis with 11 counts of perjury by declaration, and charged Moore with 10 counts of perjury by declaration (some counts overlapped), all identified by reference to specific dates in 2001 and 2002.

On June 28, 2007, Davis filed a written motion to dismiss all charges against her. Davis's motion to dismiss argued that all of the charges against her were barred by the four-year statute of limitations prescribed by Penal Code section 801.5 because Crystal Stairs became "aware of [her] violation on or before May 8, 2002," but the complaint was not filed until May 17, 2006, "more than [four] years after the violation was discovered by Crystal Stairs . . . ." Moore—represented by separate counsel—"joined" Davis's motion to dismiss. The People filed written opposition, arguing that the State of California Child Care Fund program, not Crystal Stairs, was the " 'personally aggrieved' " victim of the defendants' crimes, and that DPSS, the local governmental agency responsible for administering the state's program, had not discovered the criminal wrongdoing until May 28, 2002.

On November 29, 2007, the trial court conducted an evidentiary hearing on the motion to dismiss. At the conclusion of the hearing, the court denied the motion for the following reason: "I understand what the defense position is, but I don't . . . think that [Crystal Stairs] acts as an arm of DPSS, and by the proof, [the] date of notification [to DPSS was] made on May 28, 2002."

On January 9, 2008, Moore waived his constitutional trial rights, and pled no contest to one count of grand theft. On the same day, in accord with his

---

[1] There had been an earlier contact by phone from the YMCA to Crystal Stairs, but the exact date is not clear from the record. According to a fraud prevention specialist who worked at Crystal Stairs, "[The call from the YMCA] was definitely a red flag for us if the parent had her children enrolled somewhere else than with the provider that we were paying."

plea agreement, the trial court suspended imposition of sentence, and placed Moore on formal probation for five years, including 78 days of Caltrans (Department of Transportation) work. The trial court dismissed the 10 perjury counts.

## DISCUSSION

Moore's sole contention on appeal is that the trial court violated his federal due process rights by wrongly analyzing the statute of limitations issue. We disagree.[2]

■ Penal Code section 801.5 provides that prosecution of certain offenses, including grand theft, fraud and perjury, "shall be commenced within four years after discovery of the commission of the offense . . . ."[3] Section 803, subdivision (c), provides that the four-year statute of limitations "does not commence to run *until the discovery of [the] offense* . . . ." (Italics added.) The Penal Code does not specifically identify *whose* discovery triggers the running of the statute of limitations, but case law holds that the limitations period begins running on the date either the "*victim*" or responsible "*law enforcement personnel*" learn of facts which, if investigated with reasonable diligence, would make that person aware a crime had occurred. (*People v. Kronemyer* (1987) 189 Cal.App.3d 314, 330–331 [234 Cal.Rptr. 442] (*Kronemyer*); see *People v. Lopez* (1997) 52 Cal.App.4th 233, 246 [60 Cal.Rptr.2d 511] (*Lopez*).)

For purposes of determining whether a particular person's discovery of facts will be deemed to trigger the running of the statute of limitations, a "victim" does not include a person with a "special relationship" to the actual victim of the defendant's crime, nor does a "victim" include a person with a "special interest" in the subject matter of the crime. (See, e.g., *Kronemyer, supra*, 189 Cal.App.3d at pp. 330–335 [discovery of facts by close friend and neighbor of conservatee-victim, and/or by residual beneficiary of conservatee-victim's estate, did not trigger the statute of limitations].) In short, the criminal discovery statutes "extend no further than those persons who are direct victims [of a crime] . . . and those persons who are clothed with a

---

[2] Davis also filed an appeal. Earlier this year, we rejected her argument that the trial court wrongly analyzed the statute of limitations issue. (*People v. Davis* (Feb. 26, 2009, B206202) [nonpub. opn.].) Although Moore also argues the statute of limitations issue, he approaches the issue wielding a different legal theory and argument.

[3] All further section references are to the Penal Code unless otherwise stated.

status imposed by law [such as a victim's] guardian, conservator or equivalent . . . ." (See *Kronemyer, supra*, 189 Cal.App.3d at pp. 334–335.)

The trial court's decision to deny Moore's motion to dismiss essentially embodies two factual findings: (1) the victim of Moore's crimes was DPSS, not Crystal Stairs; and (2) DPSS first "discovered" facts which suggested that Moore had committed his crimes on May 28, 2002, when Crystal Stairs referred the matter to DPSS for an investigation. On appeal, Moore attacks the trial court's former finding, arguing that Crystal Stairs must be deemed the "victim" of his crimes as a matter of law. We find Moore's argument very interesting, but, in the end, uphold the trial court's decision to deny his motion to dismiss.

 When a defendant challenges the timeliness of a prosecution, he or she may move to dismiss the charges before trial on the ground that the prosecution is time-barred as a matter of law, and may then also assert the defense as a fact-based issue at trial. (*People v. Zamora* (1976) 18 Cal.3d 538, 547, 563–564, 572, fn. 33 [134 Cal.Rptr. 784, 557 P.2d 75].) Where, as in the case before us today, a defendant asserts a statute of limitations defense before trial, he or she bears the burden of proving that the limitations period has expired as a matter of law, and, where he or she fails to establish that the statute has run as a matter of law, a motion to dismiss must be denied. (*Lopez, supra*, 52 Cal.App.4th at pp. 250–251.) Because Moore pled no contest, our review is limited to whether the trial court correctly ruled, in the pretrial context, that Moore did not establish as a matter of law that the statute of limitations on his crimes ran before the People filed the complaint.

Moore contends he made such a showing because Crystal Stairs must be defined as a "victim" as a matter of law under *Kronemyer*. Moore argues the evidence shows—without dispute—that DPSS, as the administrator of the state's Child Care Fund program, had already transferred funds to Crystal Stairs when he committed his crimes, meaning "Crystal Stairs was in possession of the stolen funds and held title to them for the purpose of distribution to eligible recipients," meaning Crystal Stairs was the "direct victim" of his crimes. It is irrelevant, argues Moore, that Crystal Stairs had a contractual duty to report suspected fraud up the chain of command to DPSS, which then had the sole authority to conduct an investigation, because these facts do not change or negate Crystal Stairs's status as the actual, direct victim of his crimes. In other words, Moore essentially argues that DPSS may be viewed as a separate and independent "person" whose knowledge may have triggered the running of the statute of limitations, but the statute began to run when the person who "came first" learned facts of his crimes.

The cases cited by Moore—*Kronemyer, supra*, 189 Cal.App.3d 314 and *Lopez, supra*, 52 Cal.App.4th 233—do not persuade us to adopt his proposition that a third party disbursing contractor is the "victim" when a person defrauds a government-funded program. In *Kronemyer*, a defendant lawyer was appointed a victim's conservator and then sold the victim's bonds and closed the victim's bank accounts, keeping the funds for himself. In *Lopez*, a government worker with responsibility over public health funding essentially embezzled his own employer's funds by creating and paying false invoices. Neither of these scenarios fits Moore's situation. Moore accurately cites both cases for the proposition that the "owner" of stolen property, or the person "directly injured," by a defendant's fraud is a "direct victim," but his abstractly correct statement of law does not fit his own situation. Crystal Stairs never "owned" the money that it disbursed. By the same token, Crystal Stairs was not "directly injured" by Moore's fraud because it did not lose any money that it owned. Fairly examined, Moore's argument is that Crystal Stairs must be viewed as a "victim" of his fraud because it was "dispossessed" of money by his wrongdoing. We simply are not prepared to accept that definition of a fraud victim.

In our view, the better rule in the context of a crime involving a criminal taking of government-funded resources was articulated in *Lopez*:

"Ordinarily, the victim is the owner of the property or the person directly injured by the criminal acts. But when the owner is a . . . governmental entity, the designation of a person [who may be charged with notice as a] victim is less obvious. The selection of a victim from the chain of command cannot be too low because a mere coemployee, for example, may have no interest in reporting the criminal conduct of a fellow employee to his superiors or to the authorities. On the other hand, it cannot be set too high in the chain of command because a high-ranking official may never [receive] the requisite knowledge to start the statute running and the purpose of the discovery statute would be defeated.

"In [*Kronemyer*], the court confronted the issue of who could properly be described as a victim and hence charged with notice. There the defendant, an attorney and conservator . . . , stole the conservatee's assets. Defendant contended that the statute of limitations had run because a friend and neighbor, who was also a director of a museum which was in turn a residual beneficiary of the conservatee's will, had discovered the thefts more than three years before the indictment was filed. He further contended that [another] beneficiary under the will . . . had also discovered the thefts more than three years before the prosecution was commenced. The *Kronemyer* court held that neither the friend nor the beneficiary could 'qualify as discoverers for the purpose of triggering [the statute of limitations].' [Citation.] [¶] . . . Defendant in [*Kronemyer*] contended that 'the statute should

begin to run on discovery by anyone who, because of some special interest in the victim or the subject matter, is reasonably likely to discover and report the offense. . . .' [Citation.] The court rejected the argument. 'We do not believe fairness and common sense require a class of "discoverers" to include all members of the general public, neighbors, residuary beneficiaries or [relatives] of victims who fail to investigate or advise law enforcement officials of mere suspicions of wrongdoing.' [Citation.] Instead, the court concluded the . . . discovery statute 'should extend no further than those persons who are direct victims, persons having a legal duty to report and investigate crime, and those persons who are clothed with a status imposed by law as guardian, conservator or [the] equivalent, in the absence of express statutory direction.' [Citation.]

"In our view, the same rules should apply to crimes involving misappropriation of public funds and perjury in the execution of official documents relating to public funds. We hold therefore that in cases involving fiscal crimes against [a governmental entity], a victim for purposes of the discovery provisions of . . . section 803, subdivision (c), is a public employee occupying a supervisorial position who has the responsibility to oversee the fiscal affairs of the governmental entity and thus has a legal duty to report a suspected crime to law enforcement authorities." (*Lopez, supra,* 52 Cal.App.4th at pp. 246–248, fns. omitted.)

▮ In Moore's current case, he did not establish that either Crystal Stairs or any of its employees fell within *Lopez*'s definition of a "victim" to which notice of Davis's crimes may be imputed. Moore did not show that any person at Crystal Stairs had responsibility over DPSS's fiscal affairs, or had a legal duty to report a suspected crime to law enforcement authorities. On the contrary, the evidence showed that Crystal Stairs's contract with DPSS obligated Crystal Stairs to refer suspected fraud "up the chain of command," so to speak, to DPSS. It was then up to DPSS to investigate the matter, and to report suspected criminal activity to the appropriate law enforcement authorities. DPSS fits more readily into *Lopez*'s definition of a "victim," and DPSS did not learn any facts regarding Moore's possible crimes until it received Crystal Stairs's referral on May 28, 2002.[4]

We decline to hold—as a matter of law—that Crystal Stairs was a "victim" of Moore's wrongdoing.

---

[4] Moore contends that because the trial court ordered victim restitution to be paid to Crystal Stairs, it necessarily follows that Crystal Stairs is the sole or official victim within the meaning of the authority we have cited. Moore cites no authority for this proposition, nor have we found any.

## DISPOSITION

The judgment is affirmed.

Rubin, Acting P. J., and Bendix, J.,[*] concurred.

Appellant's petition for review by the Supreme Court was denied December 2, 2009, S176509.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.