Filed 11/18/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILFREDRO RODRIGUEZ et al.,<br><br>    Defendants and Appellants. | B305512<br><br>(Los Angeles County<br>Super. Ct. No. BA465793) |

_____

APPEAL from judgments of the Superior Court of Los Angeles County.  Lisa B. Lench, Judge.  Affirmed.

Yacoubian & Powell and Stewart J. Powell, for Defendant and Appellant Wilfredo Rodriguez.

Seki, Nishimura, & Watase, Bill H. Seki and Kari C. Kadomatsu for Appellant Ruben Gutierrez.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendants Wilfredo Rodriguez and Ruben Gutierrez were convicted of forgery, identity theft, grand theft, and petty theft in connection with the unlawful use of their employer's engineering seal and signature to submit building plans and engineering reports on behalf of their own clients in a moonlighting scheme. They contend on appeal the charges against them are time-barred. They also argue the trial court's evidentiary error impermissibly resulted in multiple charges against them. Lastly, they contend they may not be convicted of both forgery and identity theft based on the same engineering document. We affirm the judgments.

**FACTS**

Defendants worked together at Palos Verdes Engineering (PVE), which provides engineering services for residential and commercial building projects. During the relevant time period, PVE was owned by Ricky Morales and John Schuricht. In 2015, Morales became sole owner of PVE. Morales is a licensed civil engineer who provides structural design and drafting for buildings as well as structural inspections and observations for distressed structures or buildings under construction. Schuricht, a licensed structural engineer, provides similar services but is allowed to design essential facilities such as libraries, public schools, and buildings over five stories tall.

Licensed engineers who have passed the professional engineering tests receive an engineering seal which they use to stamp building plans or other documents requiring an engineer's services. The seal identifies the engineer by name and license number, and it specifies the type of engineer he or she is.

An engineer uses his seal to stamp building plan sets and engineering reports that are submitted to a city for approval.

2

Plan sets are comprised of pages showing the design of the building and structural calculations for the project. The design portion of a plan set shows the layout of the building, elevation, and other aesthetic components. The plan sets are stamped by a licensed engineer to indicate the calculations and designs were reviewed by him or her and meet code requirements. If all or a portion of a building plan needs to be changed, the page containing the revision replaces the old page and the plan set is resubmitted. Only complete plan sets, with every page in the proper order, are accepted.

In addition to building plans, an engineering seal may be required for other engineering reports, including structural observation reports. Structural observation reports contain a licensed engineer's observation that a building is being built according to the approved plans. The engineer conducts an on-site assessment, prepares the structural observation report, and stamps it with his seal for submission to the city.

Gutierrez worked as an architectural designer for PVE from 2000 to 2008. Gutierrez was responsible for the design portion of a proposed building project, essentially working as an unlicensed architect to draw building layouts and other aesthetic components.

Rodriguez worked as an engineering draftsman at PVE from February 1995 until March 17, 2014. Rodriguez has a civil engineering degree from USC but never passed the professional engineering tests to become a licensed engineer with his own seal. As an engineering draftsman, he provided structural calculations and plans for buildings but a licensed engineer was required to oversee his work. Rodriguez became proficient enough at his job to earn the title "Project Engineer" and was

allowed to bring in his own clients, and train draftsmen and others who worked at PVE.

## A. Discovery of Gutierrez's and Rodriguez's Moonlighting

On December 21, 2007, Morales found a folder on Gutierrez's desk containing approximately 10 invoices for Gutierrez's own company, R.G. Designs. The documents contained a set of structural calculations and drawings on PVE letterhead with Morales's seal and signature. When Morales and Schuricht confronted Gutierrez about the documents, Gutierrez admitted to moonlighting for his own company and to using PVE's company logo and name on the structural calculations. Gutierrez told Morales he was working alone and Morales believed him. At this time, Morales did not suspect Rodriguez in the moonlighting scheme even though he knew Rodriguez and Gutierrez were friends. Gutierrez was terminated from PVE on January 2, 2008.

On March 12, 2014, Morales received a phone call from a prospective PVE client who reported Rodriguez offered him a discount if he paid in cash. Morales and Schuricht audited Rodriguez's computer because they were concerned about his activities. They discovered engineering documents for five projects with Morales's seal and signature that did not relate to known PVE projects. When confronted, Rodriguez apologized and admitted he worked on 10 non-PVE projects using PVE's logo, stationary, and Morales's seal and signature. Rodriguez was terminated.

Morales and Schuricht notified the police about the fraud approximately one month later when they discovered additional non-PVE projects on Rodriguez's computer. In total, they

identified 20 projects which they believed were non-PVE projects and which form the basis for the criminal complaint against defendants.

### B. Trial

A criminal complaint was filed against defendants in February 2018. In an information filed on August 7, 2018, defendants were charged with a total of 392 felony counts of forgery in violation of Penal Code section 470, subdivision (b), identity theft in violation of section 530.5, subdivision (a), and grand theft in violation of section 487, subdivision (a).[1] The information alleged all of the charged criminal conduct occurred at different times between 2009 and 2014. It was further alleged as to all counts that defendants took property with a value exceeding $65,000 within the meaning of section 12022.6, subdivision (a)(1)[2] and that the crimes were not discovered until March 12, 2014, when the prospective client informed Morales of Rodriguez's offer of a cash discount.

Each count of forgery and identity theft corresponded to one page of a plan set or a structural observation report that was stamped and initialed using Morales's seal and signature. Each count of grand theft alleged defendants defrauded clients who paid for their services in connection with the non-PVE projects. Counts 10 to 270 were alleged against both defendants and were associated with the 20 non-PVE projects at issue. The remaining

[1] All further section references are to the Penal Code unless otherwise specified.

[2] The trial court later set aside the section 12022.6, subdivision (a)(1) allegation. The trial court also granted the People's request to change count 75 from attempted grand theft to grand theft.

counts for forgery and identity theft—counts 1 to 9 and 271 to 392—were charged to Rodriguez alone in connection with other projects in which he used Morales's seal and initials.[3]

Defendants waived a trial by jury. At the bench trial, the People presented testimony from the investigating officer, the individuals who hired defendants for their building projects, Morales, Schuricht, and others. Morales testified he never gave defendants permission to use his engineering seal or to sign his name or initials to engineering reports or building plan sets.

The People presented testimony about the moonlighting scheme. Clients, such as homeowners or contractors, would hire Gutierrez to provide design and structural engineering services on their building projects in most cases. Gutierrez, in turn, used Rodriguez for the structural calculations. Defendants worked together to submit building plan sets and structural observation reports on PVE letterhead with Morales's seal and initials to cities in connection with their clients' projects.

Rodriguez testified Morales often allowed him to stamp documents with his engineering seal, and he was asked to conduct structural observations for PVE. A former PVE employee and an architect who worked with PVE testified they observed Rodriguez and others at PVE, including a secretary, using Morales's and Schuricht's engineering seals. The architect also testified Rodriguez often conducted structural observations on the projects she had with PVE. Rodriguez explained a PVE job number was assigned to each project referred by Gutierrez to

---

[3] Due to the number of counts and because the issues presented in this appeal do not require us to do so, we do not set forth with any further specificity which counts relate to which defendant, crimes, or specific building projects.

him but he attempted to obscure the source because he knew PVE would not otherwise allow him to take the project. Defendants further presented testimony PVE received and kept money that was paid on the non-PVE projects.

Rodriguez was convicted of 238 counts of forgery and identity theft, eight counts of grand theft, and six misdemeanor counts of petty theft. The trial court found Rodriguez not guilty on counts 1, 41, 164, 165, 193, 231, 232, and counts 270 through 392. It sentenced Rodriguez to five years of formal probation on 246 felony counts, and one year of summary probation on six of the grand theft counts, counts 25, 110, 124, 140, 157, and 237. It also sentenced Rodriguez to serve 365 days in the county jail and to complete 150 days of community labor.

Gutierrez was convicted of 193 counts of forgery and identity theft, six counts of grand theft, and six misdemeanor counts of petty theft. The trial court also sentenced him to formal probation for five years, and one year of summary probation for the same six grand theft counts as Rodriguez. Gutierrez was sentenced to serve 365 days in the county jail and to complete 100 days of community labor. Both defendants were ordered to pay court operations assessments, court facilities assessments, and restitution fines.

Defendants timely appealed.

## DISCUSSION

### I. The Charges Against Defendants Are Not Time-Barred

Defendants contend their convictions are subject to reversal because they were not timely prosecuted. According to defendants, PVE's controller and its owners had actual knowledge of discrepancies in PVE's records by 2013, at the

7

latest, which would have prompted a reasonable person to investigate and discover the fraud. Thus, the People's February 2018 complaint[4] was untimely under the applicable four-year statute of limitations. The trial court found otherwise and substantial evidence supports its finding.

### A. Statute of Limitations

The parties agree the statute of limitations applicable to defendants' crimes is four years "after discovery of the commission of the offense . . ." (§§ 801.5, 803, subd. (c);[5] *People v. Price* (2007) 155 Cal.App.4th 987, 995.) The People have the burden to prove by a preponderance of the evidence that the charges against defendants were timely filed. (*People v. Zamora* (1976) 18 Cal.3d 538, 571–572 (*Zamora*).) Under the discovery rule, the prosecution can overcome the statute of limitations by pleading and proving each of the following: "(1) when and how the facts concerning the fraud became known to [the victim]; (2) lack of knowledge prior to that time; (3) that he had no means of knowledge or notice which followed by inquiry would have shown at an earlier date the circumstances upon which the cause

---

[4]     Section 804 provides that for purposes of the statute of limitations, "prosecution for an offense is commenced when any of the following occurs:  [¶] . . . [¶] (c) The defendant is arraigned on a complaint that charges the defendant with a felony."

[5]     Section 801.5 provides that prosecution of fraud-based offenses, including grand theft and forgery, "shall be commenced within four years after discovery of the commission of the offense . . . ."  Section 803, subdivision (c), provides that the four-year statute of limitations "does not commence to run until the discovery of [the] offense. . . ."

8

of action is founded.  [Citation.]"  (*Zamora, supra,* 18 Cal.3d at p. 562.)

The limitations period is triggered when either the victim or a responsible law enforcement official learns of facts which, if investigated with reasonable diligence, would make that person aware a crime had occurred. (*People v. Moore* (2009) 176 Cal.App.4th 687, 692 (*Moore*).)  "[A] 'victim' does not include a person with a 'special relationship' to the actual victim of the defendant's crime, nor does a 'victim' include a person with a 'special interest' in the subject matter of the crime.  (See, e.g., [*People v.*] *Kronemyer* [(1987)] 189 Cal.App.3d [314,] 330–335 [discovery of facts by close friend and neighbor of conservatee-victim, and/or by residual beneficiary of conservatee-victim's estate, did not trigger the statute of limitation].)  In short, the criminal discovery statutes 'extend no further than those persons who are direct victims [of a crime] . . . and those persons who are clothed with a status imposed by law [such as a victim's] guardian, conservator or equivalent . . . .' [Citation.]"  (*Moore, supra,* at pp. 692–693.)

"[L]ack of actual knowledge is not required to bring the 'discovery' provision . . . into play.  The crucial determination is whether law enforcement authorities or the victim had actual notice of circumstances sufficient to make them suspicious of fraud thereby leading them to make inquiries which might have revealed the fraud." (*Zamora, supra,* 18 Cal.3d at pp. 571–572, italics omitted; *People v. Petronella* (2013) 218 Cal.App.4th 945, 956.)  Thus, discovery of a loss by the victim alone is insufficient to trigger the limitations period.  (*People v. Soni* (2005) 134 Cal.App.4th 1510, 1518.)  "The question is whether there is

9

sufficient knowledge that a crime has been committed." (*People v. Crossman* (1989) 210 Cal.App.3d 476, 481 (*Crossman*).)

The issue of when the fraud was discovered or could have been discovered through the exercise of reasonable diligence presents questions for the trier of fact to decide. (*People v. Swinney* (1975) 46 Cal.App.3d 332, 345, disapproved on another point in *Zamora, supra*, 18 Cal.3d at pp. 564–565, fn. 26.) "When an issue involving the statute of limitations has been tried, we review the record to determine whether substantial evidence supports the findings of the trier of fact. [Citations.]" (*People v. Castillo* (2008) 168 Cal.App.4th 364, 369.)

### B. Proceedings Below

Prior to closing arguments, defendants moved to dismiss the information on the ground the charges were time-barred. Defendants presented evidence that beginning on April 30, 2009, PVE created 77 different records in connection with the non-PVE projects at issue and received 28 payments for these non-PVE projects. There were monthly aging reports and weekly staff meetings that discussed the projects each employee was assigned to and invoices showing what had been done on the projects. Additionally, Morales or his partner regularly met with PVE's controller to review PVE's books.

Defendants asserted these events and records should have led Morales to inquire into these non-PVE projects, particularly when payment was outstanding, when a non-invoiced payment was received, or some other discrepancy occurred. The invoices for these non-PVE projects should also have alerted him to instances when Rodriguez was conducting site inspections or structural observations when he was not licensed to do so. In particular, Schuricht testified the invoices for one project in June

10

2013 created an account receivable that was never paid. Defendants argued Morales was on notice to inquire as to that project and why the invoice was not paid. According to Defendants' calculation, the statute of limitations began to run in June 2013 and any prosecution should have begun by June 2017.[6] The criminal complaint, filed February 2018, was seven months too late.

The People opposed, arguing Morales had neither actual nor constructive knowledge of the criminal activity in 2007, when he discovered Gutierrez's moonlighting, or from 2009 to 2014, when the contracts, reports, meetings, or invoices may have revealed discrepancies. Indeed, Morales testified PVE's controller did not advise him of any such discrepancies in PVE's books. Alternatively, Morales was not required to proactively put a system in place to detect fraud or criminality.

As to the controller, the People argued he was not a legal "discoverer" for purposes of the discovery statutes because only a responsible law enforcement official or the victim of the crime—that is, the owner of the property or the person directly injured by the criminal acts—may trigger the limitations period. (*Moore, supra,* 176 Cal.App.4th at p. 692.)

---

[6] On appeal, Defendants move the discovery date from June 2013, the date they set forth in their motion to dismiss, to February 2013, the purported date of their last non-PVE project. By defendants' new calculation, the People were required to prosecute them by February 2017, and the February 2018 criminal complaint was one year overdue. The People do not take issue with defendants' new discovery date and neither do we because it does not change our analysis of the issue or our conclusion.

11

The trial court denied the motion to dismiss, concluding "the People's position is a better position."  It later expressly found "the People proved the allegation filed under Penal Code section 803(c)."  Thus, the trial court found true the allegation in the information that discovery of the criminal activity did not occur until March 12, 2014, when PVE's prospective client called Morales and informed him that Rodriguez had offered to provide a cash discount.  This phone call led Morales to conduct a search of Rodriguez's work station and company computer, revealing fraudulent contracts, unauthorized use of company letterhead, forged signatures and unauthorized use of Morales's seal.  The trial court further found true the allegation "that no victim of said criminal activity had actual and constructive knowledge of said criminal activity prior [to] March 12, 2014 because defendants Ruben Gutierrez and Wilfredo Rodriguez had concealed their actions within the meaning of Penal Code section 803(c)."

## C. Substantial Evidence Supports the Trial Court's Finding the Limitations Period Was Not Triggered Until 2014

Substantial evidence supports the trial court's finding that defendants' criminal activity was not discovered until March 12, 2014, when PVE's prospective client advised Morales that Rodriguez offered him a cash discount.  The record shows Rodriguez was a trusted employee who had worked at PVE for 19 years.  He was given a great deal of responsibility, including training new employees and bringing in his own clients.  Morales testified he did not suspect Rodriguez in 2008 when he fired Gutierrez for moonlighting.  Indeed, Morales and Schuricht believed they had resolved the issue by terminating Gutierrez.

12

Substantial evidence also supports the trial court's finding that the criminal activity was not discovered prior to March 12, 2014, because defendants concealed their actions. The record shows each of the non-PVE projects held a PVE number listing Rodriguez as the project engineer and obscuring Gutierrez as the source of the job. As a result, Rodriguez would be alerted to any issues or questions that arose in connection with that project. If, for example, a non-PVE client called with a question, the call would be directed to Rodriguez. The People argued more questions would have been raised if a PVE job number had not been assigned.

We are not persuaded by defendants' argument that diligent inquiry would have revealed their fraud before March 12, 2014. First, defendants charge the controller with knowledge sufficient to trigger the limitations period. They argue the controller's knowledge of the discrepancies in the financial records from 2009 to 2013 should be imputed to PVE, the "victim" of defendants' fraud. Defendants' contention is meritless because PVE is not the victim of defendants' crimes; Morales and defendants' clients are. As to the forgery and identity theft charges, defendants were convicted of fraudulently using Morales's seal and his signature. There is no evidence or contention that PVE owns Morales's engineering seal, much less his signature. As to the grand and petty theft convictions, defendants were charged with and found guilty of "knowingly and designedly, by a false and fraudulent representation and pretense, obtain[ing] money, labor and real and personal property by fraud" from their clients.[7] PVE is simply not a victim of any of

[7]     The elements of the offense of grand theft by means of false pretenses are: (1) a defendant made a false representation,

13

the criminal offenses of which defendants were convicted. Thus, its controller's actual or constructive knowledge could not trigger the limitations period. (*Moore, supra,* 176 Cal.App.4th at p. 692.)

Defendants next argue Morales and Schuricht were put on inquiry notice of their fraud during the weekly meetings to discuss ongoing projects and when they met with PVE's controller every month from 2009 to 2013 to discuss PVE's finances. Defendants contend Morales and Schuricht were negligent because "[i]f they had examined the financial documents with reasonable care, PVE would have discovered that its employees were involved in the alleged moonlight scheme." Indeed, "the testimony by Morales, [the controller] and Schuricht regarding the operations of PVE, the purpose of the monthly meetings and accounting reports and their own responsibility for the business demonstrate that PVE and its owners were aware of facts and circumstances to, at least, become suspicious of the possibility for a moonlighting scheme and prompt inquiry."

By defendants' own reasoning, an investigation into the financial and record-keeping discrepancies would have led to the discovery of the moonlighting scheme. Moonlighting is not a criminal offense. "[I]t is the discovery of the crime, and not just a

_____

(2) the representation was made with intent to defraud the owner of the property, and (3) the owner was in fact defrauded in that he or she parted with the property in reliance on the defendant's representation. (*People v. Wooten* (1996) 44 Cal.App.4th 1834, 1842; *People v. Britz* (1971) 17 Cal.App.3d 743; see also CALCRIM Nos. 1801, 1804.) The elements of the crimes of theft remain the same except that the distinction between grand and petty theft is in the type of articles stolen, whether the articles were taken from the person of another, and in the value thereof. (*Gomez v. Superior Court* (1958) 50 Cal.2d 640, 328.)

14

loss, that triggers the running of the statute." (*People v. Lopez* (1997) 52 Cal.App.4th 233, 246, fn. 4; see also *Crossman, supra,* 210 Cal.App.3d at p. 481 [an offense is not constructively discovered if the facts " 'would have only created a suspicion of wrongdoing.' "].)

A reasonable inference can be made that an investigation into the financial discrepancies would have led to a suspicion of wrongdoing but not necessarily the discovery of a crime. This inference is borne out by the fact Morales and Schuricht discovered Gutierrez's moonlighting in 2007 but did not discover any crimes at that time. Defendants ask this court to consider the evidence and make a different inference about the outcome of an investigation by Morales and Schuricht. This we cannot do. (See *People v. Brown* (1984) 150 Cal.App.3d 968, 970 ["When a jury's verdict is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, which will support it, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the jury. It is of no consequence that the jury believing other evidence, or drawing different inferences, might have reached a contrary conclusion."]

II.   **The Trial Court Did Not Err When It Struck Morales's Testimony Regarding What Comprises a Document and Allowed Convictions Based on Each Page of a Plan Set**

Defendants next contend the trial court erred when it precluded testimony from Morales regarding the definition of a

15

"document." According to defendants, "[h]ad the Court allowed counsel to question Morales as to the definition of a 'document' in the context of this case, it would have received evidence that conclusively establishes that plan sets, and structural calculation sets, albeit comprised of multiple pages, are a single document which is presented to the relevant city at one time—*in one act*—to obtain city approval. As such, charging each individual page separately is inappropriate and violates Penal Code section 954 and relevant case precedent." In short, defendants assert they may only be convicted of one count of forgery or identity theft for each plan set rather than one count each of forgery and identity theft for each page of a plan set.

Defendants' challenge to the trial court's evidentiary ruling raises two issues:

1) Were multiple charges permissibly based on treating each page of a plan set as an individual document?

2) Did the trial court abuse its discretion when it struck Morales's testimony regarding what constitutes a document?

We conclude the answer to the first question is yes and the answer to the second question is no.

### A. Proceedings Below

After the preliminary hearing, defendants moved to dismiss "duplicative" charges that were based on treating each plan set page as a different and independent document. Defendants, relying on section 954 and case authority, argued each completed plan set may only support one count of identity theft and one count of forgery for each project at issue. The trial court rejected defendants' primary contention that individual pages do not each constitute a document for purposes of multiple charges. For

16

reasons not specified in the record, it partially granted defendants' section 954 motion and set aside identity theft counts 11, 26, 43, 44, 56, 87, 111, 141, 173, 182, and 292.

At trial, Morales testified, without objection, that the only way to get a plan set approved by a city is to have a complete set, that is all the pages are together and in the proper order. Defense counsel asked Morales if, "in [his] view, [ ] one plan set all together in proper order is a 'document'." Morales replied, "Yes." The trial court granted the prosecutor's motion to strike Morales's answer on relevance grounds.

Defense counsel argued Morales's opinion as an engineering expert was relevant to "what is a document for engineering purposes" and "how the case is charged, how plans are processed." The trial court disagreed that an engineer's definition was relevant to the legal definition of what is a document. The court questioned whether, instead, "[t]he issue is the use of a stamp, correct?" It ultimately declined to revise its ruling and Morales's reply remained stricken.

## B. The Convictions Based on Each Page of a Plan Set Were Proper

We first consider whether, as defendants contend, there can only be one count of forgery or identity theft per plan set. In support of this argument, defendants rely on section 954 and caselaw that holds there cannot be multiple forgery convictions where only one document is involved.[8] We are not persuaded.

_____

[8] Defendants provide no authority for the proposition that the general rule applicable to forgery of one count per instrument also applies to the crime of identity theft. We decline to extend the reasoning behind the forgery cases to identity theft. However, we discuss below whether defendants may be convicted

17

### 1. Applicable Law

Section 954 provides, in pertinent part, that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense . . . under separate counts . . . .  The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . ."  The California Supreme Court has "repeatedly held that the same act can support multiple charges and multiple convictions.  'Unless one offense is necessarily included in the other [citation], multiple convictions can be based upon a single criminal act or an indivisible course of criminal conduct (§ 954).'  [Citation.]" (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537 (*Gonzalez*).)  Likewise, section 954 " 'does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' " (*People v. Vidana* (2016) 1 Cal.5th 632, 650 (*Vidana*).)  We review de novo the issue of whether multiple convictions are proper under section 954. (*People v. Villegas* (2012) 205 Cal.App.4th 642, 646.)

In relation to forgery, courts have held "there cannot be multiple convictions based on any subdivision of Penal Code section 470 where only one document is involved." (*People v. Kenefick* (2009) 170 Cal.App.4th 114, 124 (*Kenefick*).  "The rule of one count of forgery per instrument is in accord with the essence of forgery, which is making or passing a false document." (*Id.* at p. 123.)  In *Kenefick*, the court found "[m]ultiple forged signatures on a single document constitute but one count of forgery." (*Id.* at

of both identity theft and forgery based on the same page of a plan set.

18

p. 116; *People v. Martinez* (2008) 161 Cal.App.4th 754, 756 (*Martinez*) ["falsification of two signatures on a single trust deed constituted only one count of forgery."].)

### 2. Analysis

Defendants argue it was impermissible to separate out each individual page as a "document" for purposes of the forgery counts because each plan set was prepared with one intent or objective in mind, and its submission to a city constituted one act. The law and the record refute defendants' claims.

The People's treatment of each page of a plan set as a separate document is supported by the Legislature's differentiation between plan sets and other engineering reports. Business and Professions Code section 6735 provides: "If civil engineering plans are required to be signed and sealed or stamped and have multiple sheets, the signature, seal or stamp, and date of signing and sealing or stamping shall appear on each sheet of the plans. If civil engineering specifications, calculations, and reports are required to be signed and sealed or stamped and have multiple pages, the signature, seal or stamp, and date of signing and sealing or stamping shall appear at a minimum on the title sheet, cover sheet, or signature sheet." (Bus. & Prof. Code, § 6735.) It is reasonable to infer the Legislature considers each sheet of a plan set a separate document because it requires a signature and stamp on each sheet of a plan set but does not have the same requirement for any other engineering report.

The evidence elicited at trial further supports treating each page of a plan set as an individual document. The record shows that each plan page has unique characteristics and serves different purposes. Although they all relate to a common project,

19

they are separate documents that may be created or submitted on different dates and show different aspects of the construction project.

For example, People's exhibit 101, admitted into evidence on October 1, 2019, is a plan set for three new two-story detached single-family dwellings, each with an attached one-car garage. It is comprised of six pages: the cover page, sheets S1, S2, SD1, SD2, and SN1. Aside from the cover page, each page is stamped with Morales's engineering seal and contains his initials. The parties stipulated Morales did not stamp or initial those pages for exhibit 101. Nor did he give permission for anyone else to do so. Sheet S1 shows the structural plans for units "A" and "B" while sheet S2 shows the structural plans for unit "C." Sheets SD1 and SD2 show different structural details, including the roof, floor, stair, and footing details. Further, it appears revisions were submitted by Rodriguez for sheets S1 and S2 on April 14, 2012, while no revisions were made to the cover page, sheets SD1, SD2, and SN1, which each bear the date of January 20, 2012. Given the statutory requirements and the record in this case, defendants' multiple counts for forgery based on individual pages of plan sets was appropriate.

The cases cited by defendants—*Vidana, supra*, 1 Cal.5th 632, *People v. Harrison* (1989) 48 Cal.3d 321, *Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, and *People v. Shiga* (2019) 34 Cal.App.5th 466—do not support the contention that multiple counts of forgery are impermissible under the circumstances of this matter. None of the cited cases involve forgery, much less discuss the rule articulated in *Kenefick* and *Martinez* that one forged document may result in only one count of forgery. Indeed, *Vidana* affirms the general rule that " 'the same act can support

multiple charges and multiple convictions.' " (*Vidana, supra,* 1 Cal.5th at p. 637.)

**B. The Trial Court Did Not Err When It Excluded Morales's Opinion Testimony**

We now address whether the trial court abused its discretion when it struck Morales's testimony regarding what constitutes a document for purposes of the forgery counts.[9] We conclude there was no abuse of discretion.

The rules regarding our review of a trial court's evidentiary decisions are not controversial: Only relevant evidence is admissible. (Evid. Code, § 350.) A trial court's admission or exclusion of evidence is reviewable for abuse of discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 201.) Evidentiary error, if any, is harmless if it is not reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*People v. Marks* (2003) 31 Cal.4th 197, 227; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The determination of whether multiple forgery counts is permissible is a question of law to be determined by the trial court. (See *Martinez, supra,* 161 Cal.App.4th at p. 762; see also *In re Carleisha P.* (2006) 144 Cal.App.4th 912, 918–923; *People v. Shabtay* (2006) 138 Cal.App.4th 1184, 1190.) To make this determination, the court must decide whether the multiple forgery counts are appropriately based on multiple documents or impermissibly based on a single document. (*Martinez, supra,* 161 Cal.App.4th at p. 762.)

Given this, Morales's testimony regarding his "view" of what constitutes a document for purposes of multiple forgery

---

[9]    We reject the People's argument Gutierrez forfeited this issue for failure to raise it below.

21

counts is irrelevant, whether presented as lay or expert testimony. " '[I]t is thoroughly established that experts may not give opinions on matters which are essentially within the province of the court to decide.' [Citations.]" (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 884.) Thus, the trial court did not abuse its discretion when it struck that portion of Morales's testimony.

Even if it was error to strike Morales's testimony as to what constitutes a document, we conclude it was harmless. Morales's testimony regarding plan sets was properly admitted; he testified that only a complete plan set, with all of the pages together and in order, will be accepted by a city for submission. This evidence underlays defendants' argument that only a complete plan set is a document, not each individual page. Thus, it is not reasonably probable that defendants would have achieved a more favorable result without the error given that we presume the trial court in a bench trial considered this admissible evidence. (*Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 606.)

## III. Defendants Were Properly Convicted of Both Forgery and Identity Theft Based on the Same Document

Defendants next argue they could not be convicted of both identity theft and forgery based on the same document because they constitute multiple convictions for a different statement of the same offense, which is prohibited under section 954. We are not persuaded that identity theft and forgery are different statements of the same offense.

### A. Legal Principles[10]

Recent Supreme Court decisions which explain when multiple convictions for a different statement of the same offense are prohibited by section 954 are instructive here. In *Gonzalez,* the high court held oral copulation of an unconscious person under subdivision (f) of former section 288a and oral copulation of an intoxicated person under subdivision (i) of the same section constituted two separate offenses for purposes of section 954 and were not different statements of the same offense. (*Gonzalez, supra*, 60 Cal.4th at p. 535.) The court began by examining the wording and structure of former section 288a. It noted the subdivisions "differ in their necessary elements" and "neither offense is included within the other." (*Id*. at p. 539.) Additionally, each subdivision prescribes specific punishments. (*Ibid*.)

In *Vidana*, the Supreme Court held that larceny under section 484, subdivision (a) and embezzlement under section 503 describe the same offense such that the defendant could not be convicted of both under section 954. (*Vidana, supra*, 1 Cal.5th at pp. 647–648.) The court explained that although "[l]arceny and embezzlement have different elements and neither is a lesser included offense of the other," these factors "do not definitely resolve whether larceny and embezzlement are a single offense." (*Id*. at p. 648.) In reaching its decision, the court relied on the historical context and legislative history of the relevant statutory amendments, emphasizing that the Legislature had sought to eliminate the " 'arbitrary distinctions' " between larceny, embezzlement, and obtaining property under false pretenses that

---

[10] We set forth the general provisions of section 954 in the previous discussion and need not repeat them here.

23

made it difficult to determine which crime a defendant had committed.  (*Id*. at pp. 639, 648–649.)  The court explained, "California reduced its problems with pleading and proving" these crimes by " 'consolidat[ing] . . . larceny, embezzlement and obtaining property under false pretenses, into one crime, designated as theft.' "  (*Id*. at pp. 639, 648.)

In addition to this clear expression of legislative intent, the Court reasoned that larceny and embezzlement were alternative theories of liability for the same offense because a jury could convict a defendant of theft without unanimously agreeing on the method (larceny, embezzlement, or obtaining property under false pretenses) by which the theft was committed.  (*Vidana, supra,* 1 Cal.5th at p. 643.)  Finally, the court observed that the identical punishments for larceny and embezzlement suggested that the two statutes are different statements of the same offense.  (*Id*. at p. 648.)

### B.  Analysis

We apply the reasoning in *Gonzalez* to conclude defendants may be convicted of both forgery and identity theft based upon a single act or an indivisible course of conduct.  As in *Gonzalez,* we begin by examining the statutes' words, giving them a plain and commonsense meaning.

Section 470, subdivision (b) provides, "[e]very person who, with the intent to defraud, counterfeits or forges the seal or handwriting of another is guilty of forgery."  (§ 470, subd. (b).)  "Forgery is punishable by imprisonment in a county jail for not more than one year, or by imprisonment pursuant to subdivision (h) of Section 1170."  (§ 473, subd. (a).)

Section 530.5, describes the crime of identity theft and provides, "every person who willfully obtains personal identifying information, as defined in subdivision (b) of Section 530.55, of

24

another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense, and upon conviction therefor, shall be punished by a fine, by imprisonment in a county jail not to exceed one year, or by both a fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170." (§ 530.5, subd. (a).)

By their plain language, forgery and identity theft "differ in their necessary elements," "neither offense is included within the other," and each offense prescribes specific punishments. (*Gonzalez, supra*, 60 Cal.4th at p. 539.) Under section 470, subdivision (b), forgery is a specific intent crime, requiring the intent to defraud. On the other hand, "subdivision (a) of section 530.5 does not require an intent to defraud." (*People v. Hagedorn* (2005) 127 Cal.App.4th 734, 744; see *People v. Rathert* (2000) 24 Cal.4th 200, 205 [discussing general and specific intent crimes].) One may forge a document without using the personal identifying information of another and may commit identity theft without forging the seal or handwriting of another. (*People v. Ortega* (1998) 19 Cal.4th 686, 692 [where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense of the former].) Additionally, the punishment for identity theft may include a fine while the punishment for forgery does not include any fine.

Defendants do not dispute forgery and identity theft are not included offenses of the other. They instead rely on *Vidana* to contend "[t]he proper question is whether the two offenses are based on the act or course of conduct."

Defendants misread *Vidana*. *Vidana* affirmed that the Supreme Court has "repeatedly" held the same act can support multiple convictions of separate offenses. (*Vidana, supra,*

1 Cal.5th at p. 637.) *Vidana* found the legislative history and statutory scheme of the statutes in question supported a conclusion that larceny and embezzlement were different statements of the same offense within the meaning of section 954, despite the fact that the offenses contained different elements and neither was a lesser included offense of the other. (*Id.* at p. 648.)

Defendants fail to present a similar legal analysis of whether forgery and identity theft present different statements of the same offense. They provide no legislative history or statutory analysis to support such a conclusion. They only argue that "defendants could not have committed forgery without identity theft as each document contained *both* the stamp and initial which were presented to the city simultaneously to obtain but one objective." This factual argument has no bearing on the legal question of whether identity theft and forgery are different statements of the same offense within the meaning of section 954.

## DISPOSITION

The judgments are affirmed.

### CERTIFIED FOR PUBLICATION

OHTA, J. *

We Concur:

GRIMES, Acting P. J.          STRATTON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26